AB:SMS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (917) 605-4759 THAT IS IN THE CUSTODY OR CONTROL OF T-MOBILE U.S., INC. | No. 23-MC-02980<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tatiana Biess, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number (917) 605-4759 (the "Target Phone Number"), that is used by Frederick Rogers ("ROGERS"), whose service provider is T-Mobile U.S., Inc., a wireless telephone service provider located in Parsippany, New Jersey. The Target Phone Number is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. §§ 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. See 18 U.S.C. § 3123(b)(1).

3. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been for approximately six years. I am a member of ATF's Joint Firearms Task Force, and in that capacity, among other things, I am responsible for investigating firearms-related offenses. My training and experience has included investigating crimes facilitated by the use of electronic communication devices. I have received training regarding the use of cellular telephones and electronic devices in furtherance of criminal activity, and, through my work on the task force, I have experience in examining cellular telephones and electronic devices to search for evidence of crime. I also have experience reviewing call usage reports and data associated with cellular location data.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that ROGERS has violated Title 18, United States Code, Sections 922(a)(6), 922(a)(5), 922(d), and 371, (collectively, the "Subject Offenses"), as described in Attachment B. Although ROGERS has not yet been charged with a crime, I understand that the United States Attorney's Office in the Northern District of Georgia intends to present an indictment before the Grand Jury on or about November 7, 2023, for conspiracy, in violation of Title 18, United States Code, Section 371. Law enforcement agents currently intend to arrest ROGERS, and his co-conspirator, Donell Glover ("GLOVER"), on or about November 8, 2023. Because the government intends to arrest ROGERS and GLOVER on the same day to avoid their learning of each other's other arrests and trying to avoid arrest themselves, and because the locations and movements of these persons are not known, agents seek to obtain location information to

efficiently and safely locate these individuals to affect their arrests. Thus, based on the facts set forth below, there is probable cause to believe that the location information described in Attachment B will assist agents in safely arresting ROGERS, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).[1]

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a "district court of the United States (including a magistrate judge of such a court)" that has jurisdiction over the offense being investigated. 18 U.S.C. § 2711(3)(A)(i).

## **PROBABLE CAUSE**

*Beginning of the investigation*

7. The United States government, including the ATF, is investigating GLOVER and ROGERS for violations of the Subject Offenses, including knowingly making false written statements to licensed dealers of firearms, sale and transfer of firearms to a non-resident, and sale or disposal of a firearm to a prohibited person.

8. ATF agents reviewed records concerning firearm transactions by GLOVER. Between on or about December 2015 and July 2021, GLOVER purchased approximately sixty-three (63) guns at about twelve different federal firearms licensees ("FFLs"). Fifteen of those firearms were subsequently recovered by law enforcement agents, twelve of which were recovered in New York, two recovered in North Carolina, and one recovered in Georgia.

---

[1] Rule 41(c)(4) "covers a defendant or witness for whom an arrest warrant has theretofore issued, or a defendant for whom grounds to arrest exist even though no arrest warrant has theretofore issued." Fed. R. Crim. P. 41, Advisory Committee Note (1979).

3

9. Specifically, five of the ten pistols GLOVER purchased on November 14, 2020, were recovered in New York on June 17, 2022; January 12, 2021; July 16, 2021; July 3, 2021; and June 10, 2021 by the New York City Police Department. According to the traces, one of the firearms was recovered from a convicted felon and another from a known gang member.

10. Moreover, two of the eight pistols GLOVER purchased on November 28, 2020 were recovered in the Eastern District of New York in Brooklyn on December 28, 2020 (30 days later) and September 8, 2023 by the New York City Police Department. One of the five pistols GLOVER purchased on November 29, 2020 was recovered by the Troy Police Department in New York.

11. One of the firearms GLOVER purchased on May 5, 2021 was recovered by the New York City Police Department. According to the trace, the firearm recovered on May 5, 2021 was recovered from an individual who was arrested about two months prior for criminal possession of a weapon.

*July 28, 2021 interview with GLOVER*

12. On July 28, 2021, ATF investigators went to the address GLOVER listed on his FFL forms and conducted a consensual non-custodial interview of GLOVER. Despite FFL forms 4473 showing that GLOVER purchased approximately 63 guns since December 2015, GLOVER claimed to only have four guns in his possession and indicated he had sold the rest. GLOVER also said that he has a cousin, ROGERS, who is a resident of the Eastern District of New York (Queens) and is currently on parole. GLOVER stated that ROGERS introduced GLOVER to two other individuals GLOVER knew as "Lil Q" and "Munch." GLOVER said that in December of 2020, ROGERS, Lil Q, and Munch came to visit him in Georgia from New York (ROGERS and Lil Q from the Eastern District of New York) and traveled on the Chinese bus (a

4

term for buses that leave out of Chinatown in New York City). GLOVER said that during their visit, they all attended a gun show and that Lil Q and Munch gave GLOVER money to buy firearms for them.

13.     I ran ROGERS' criminal history and found he had been convicted of the following felony offense: *New York v. Frederick ROGERS*, Case No. 02844-2009, Criminal Possession of a Weapon – 2nd Degree, sentenced to 5 years' imprisonment on December 8, 2010 and 5 years' post-release supervision.

*Information provided via Cash App, T-Mobile, Verizon, and AT&T*

14.     ATF investigators served subpoenas to Cash App, T-Mobile, Verizon, and AT&T to further investigate the case. Based on their names, dates of birth, and known phone numbers, agents were able to identify a Cash App account that belonged GLOVER and two accounts that belonged ROGERS. Transactions showed the transfer of money between GLOVER and ROGERS (using an account name "SLOPE") on dates on or near GLOVER's purchases of firearms at FFL. For example:

   a. *September 26, 2020*: GLOVER purchased one firearm from FFLs in the Northern District of Georgia (NDGA) for approximately $929. On September 26, 2020, ROGERS using Cash App paid GLOVER $700.

   b. *November 14, 2020*: GLOVER purchased ten firearms from FFLs in the NDGA. Records of the purchase price were unavailable. On November 14, 2020, ROGERS paid GLOVER $2,500 via Cash App. Approximately twenty minutes later, GLOVER paid ROGERS $2,500 via Cash App.

   c. *November 28 -29, 2020*: On November 28, 2020, GLOVER purchased eight guns from FFLs in the NDGA. On November 29, 2020, GLOVER purchased

5

        five guns from FFLs in the NDGA.  Records of the purchase prices were unavailable.  On November 27, 2020, ROGERS paid GLOVER $272 via Cash App.  On November 28, 2020, ROGERS paid GLOVER $300 via Cash App.  Several hours later, ROGERS paid GLOVER $630 via Cash App.

    d. *January 16, 2021*: On January 16, 2021, GLOVER purchased six guns from an FFL in the NDGA.  Records of the purchase price were unavailable.  On January 16, 2021, ROGERS paid GLOVER $1,050 via Cash App.  About an hour later, ROGERS paid GLOVER $151 via Cash App.

    e. *May 5, 2021*: On May 5, 2021, GLOVER purchased two guns from an FFL in the NDGA for approximately $852.  On May 5, 2021, ROGERS paid GLOVER $800 via Cash App.

    f. *May 22, 2021*: On May 22, 2021, GLOVER purchased one gun from an FFL in the NDGA. Records of the purchase price were unavailable.   On May 22, 2021, ROGERS paid GLOVER $650 via Cash App.

*Cellsite Records*

    15.    Agents learned of two telephone numbers associated with ROGERS.  Telephone number 917-605-4759 (the Target Phone Number) was listed as ROGERS's phone number on parole records.  Information subpoenaed from T-Mobile show ROGERS as the subscriber for the Target Phone Number since January 20, 2021. Cash App lists the same number as the telephone number on one of ROGERS's Cash App accounts (the Slope account).   And, prior to the Target Phone Number, ROGERS is the subscriber to telephone number 917-250-4201 ("4201") between September 25, 2019 through January 20, 2021.

16. ATF investigators obtained a warrant for cellsite information associated with two cellphone numbers associated with ROGERS on the day of and around the time of firearm purchases made by GLOVER at FFLs. A review of the records showed ROGERS often traveled to Georgia the day before/the day of a purchase and traveled back to New York (the Eastern District and elsewhere) the same or following day.

   a. *September 24 -26, 2020*: On September 24, 2020, GLOVER purchased two firearms from FFLs in the NDGA. On September 26, 2020, GLOVER purchased one firearm from an FFL in the NDGA. Cellsite data for ROGERS's phone (4021) showed his phone in New Jersey on September 23, 2020. The data then showed the phone traveling to Atlanta, Georgia on September 24, 2020. The data then showed the phone in the Eastern District of New York, in Queens, on September 27, 2020.

   b. *November 28 -29, 2020*: On November 28, 2020, GLOVER purchased eight guns from FFLs in the NDGA. On November 29, 2020, GLOVER purchased five guns from FFLs in the NDGA. Cellsite data for ROGERS' phone (4210) showed ROGERS in Manhattan, New York on November 25, 2020, then traveling to Atlanta, Georgia on November 27, 2020, and then in the Eastern District of New York, in Queens, on November 29, 2020.

   c. *January 16, 2021*: On January 16, 2021, GLOVER purchased six guns from an FFL in the NDGA. On January 13, 2021, cellsite data for ROGERS' phone (4201) showed ROGERS in the Eastern District of New York in Queens. On January 15, 2021, the cellsite data showed ROGERS in Atlanta,

Georgia, and then back in the Eastern District of New York in Queens on January 17, 2021.

d. *May 22, 2021:* On May 22, 2021, GLOVER purchased one gun from an FFL in the NDGA. On May 19, 2021, cellsite data for ROGERS' phone (the Target Phone Number) showed him in the Eastern District of New York in Queens on May 19, 2021, in Atlanta, Georgia on May 22, 2021, and then back in the Eastern District of New York in Queens on May 23, 2021.

*The Target Phone Number*

17. T-Mobile records indicate that ROGERS is the subscriber for telephone number 917-605-4759 (the Target Phone Number) since January 20, 2021. Records further showed that the phone is currently active and listed ROGERS' address as 18825 121st Ave, Saint Albans, New York 11412, within the Eastern District of New York in Queens. A review of the cellsite information described above also showed that both phone numbers were located in the vicinity of that address on several occasions. Obtaining the information outlined in Attachment B will allow ATF to more accurately locate ROGERS, including by narrowing down a time frame in which ROGERS is likely at his residence; therefore, increasing the likelihood of agents safety locating ROGERS to further investigate his criminal activity, attempt to interview him, and/or effectuate his arrest.

18. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as

8

"tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

19. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Phone Number, including by initiating a signal to determine the location of the Target Phone Number on T-Mobile's network or with such other reference points as may be reasonably available.

20. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Phone Number. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

21. Based on my training and experience, I know that T-Mobile also can collect per-call measurement data, which T-Mobile also refers to as the "advanced timing data" ("ATD"). ATD data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

22. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

23. Based on my training and experience, I know that wireless providers such as T-Mobile typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as T-Mobile typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a

particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Phone Number's user or users and may assist in the identification of co-conspirators.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c). The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode and/or capture certain information in Attachment A for each communication to or from the Target Phone Number, without geographic limit, for a period of thirty days pursuant to 18 U.S.C. § 3123(c)(1).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Phone Number would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. See 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as

defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody or control of T-Mobile.  I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Phone Number on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Phone Number outside of daytime hours.

28. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court, but allowing the government to disclose the application and warrant pursuant to the government's Rule 16 discovery obligations.  These documents discuss an ongoing criminal investigation that is neither public nor known to all of the subjects of the investigation.  Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving subjects an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

29.     Pursuant to 18 U.S.C. § 2705(b) and for the reasons stated above, it is further requested that the Court issue an Order commanding T-Mobile not to notify any person (including subscribers or customers of the account(s) listed in the attached warrant) of the existence of the attached warrant for the period of one year from the date of the Order, except that the Wireless Providers may disclose the warrant to its respective attorney for the purpose of receiving legal advice.

                          Respectfully submitted,

                          /s/ Tatiana Biess

                          Tatiana Biess
                          Special Agent, ATF

Sworn to before me by telephone on November 3, 2023

*Lois Bloom*
―――――――――――――――――
HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**Attorney Certification Under 18 U.S.C. §§ 3121-3127**

To ensure technical compliance with 18 U.S.C. §§ 3121-3127, the warrant applied for herein will also function as a pen register order.  I, an attorney for the Government, certify that the prospective information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the Federal Bureau of Investigation.  See 18 U.S.C. §§ 3122(b), 3123(b).

s/ Sean M. Sherman
Sean M. Sherman
Assistant United States Attorney
Eastern District of New York

## ATTACHMENT A
**Property to Be Searched**

      1.      The cellular telephone assigned call numbers (917) 605-4759 (the "Target Phone Number"), that is used by Frederick Rogers ("ROGERS"), whose service provider is T-Mobile US, Inc., a wireless telephone service provider located in Parsippany, New Jersey (the "Provider").

      2.      Records and information associated with the Target Phone Number within the possession, custody or control of T-Mobile.

## ATTACHMENT B

### Particular Things to be Seized

I. **Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government, including members of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the following information pertaining to the Target Phone Number listed in Attachment A for the time period of 30 days from the date of this warrant:

- a. The following information about the customers or subscribers of the Account:
    - i. Names (including subscriber names, user names, and screen names);
    - ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
    - iii. Local and long distance telephone connection records;
    - iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
    - v. Length of service (including start date) and types of service utilized;
    - vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

|  |  | Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"); |
|---|---|---|
|  | vii. | Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); |
|  | viii. | Means and source of payment for such service (including any credit card or bank account number) and billing records; and |
|  | ix. | the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses). |

b. The following information pertaining to the Target Phone Number listed in Attachment A for the time period of 30 days from the date of this warrant, all records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Target Phone Number, including information that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), including:

    i. information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received as well as per-call measurement data (also known as the "advanced timing data" or "ATD" data, "Advanced Timing Data," "Per Call Measurement" data and/or "PCMD").

2

      c.      Information associated with each communication to and from the Target Phone Number for a period of 30 days from the date of this warrant, including information that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), including:

      i.      Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

      ii.      Source and destination telephone numbers;

      iii.      Date, time, and duration of communication;

      iv.      All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Phone Number will connect at the beginning and end of each communication as well as per-call measurement data (also known as "advanced timing data" or "ATD"); and

      v.      All information about the location of the Target Phone Number described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Phone Number" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile,

3

T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the Target Phone Number on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. See 18 U.S.C. § 3103a(b)(2).

II.     **Information to Be Seized by the Government**

All information described above in Section I that will assist in locating and arresting ROGERS, and individual for whom probable cause exists that the has violated Title 18, United States Code, Sections 922(a)(6), 922(a)(5), 922(d), and 371, and is thus a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by T-Mobile in order to locate the things particularly described in this warrant.